UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK DUTHLER,

       Plaintiff,                              Hon. Robert J. Jonker

v.                                            Case No. 1:13-cv-1095-RJJ-PJG

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and Supplemental Security Income (SSI) benefits. On May 12, 2010, plaintiff filed his application for DIB, and the next day he filed his application for SSI benefits, alleging for each a September 1, 2008, onset of disability. (Page ID 42, 257-58, 265). His claims were denied on initial review. (Page ID 192-211). On May 10, 2012, he received a hearing before an administrative law judge (ALJ). (Page ID 63-163). On May 21, 2012, the ALJ issued a decision finding that plaintiff was not disabled. (ALJ Op., Page ID 42-58). On August 16, 2013, the Appeals Council denied review (Page ID 24-26), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying his claims for DIB and SSI benefits. He cites the following two purported errors as bases for overturning the Commissioner's decision: (1) that the

ALJ lacked substantial evidence to reject the opinion of his treating psychologist regarding the materiality of his substance-use disorder, and (2) that the ALJ improperly substituted her own judgment for that of the treating psychiatrist. (Plf. Brief at 1, Dkt. 19, Page ID 738). Both of these purported errors relate to one overriding issue: whether there was substantial evidence to support the ALJ's decision that plaintiff's substance-use disorder was "material" to the determination of disability.

I conducted oral arguments on January 26, 2015. Having reviewed the record, and having considered the parties' written and oral submissions, I recommend that the Commissioner's decision be affirmed.

## **Legal Standard**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the

[Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854-55 (6th Cir. 2010).

A claimant must prove that he suffers from a disability. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

In applying this standard, the Commissioner has developed a five-step sequential analysis:

> The claimant must first show that [he] is not engaged in substantial gainful activity. Next, the claimant must demonstrate that [he] has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that [his] impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that [he] is incapable of performing work that [he] has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

*White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

A claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past work through step four. *Jones v. Commissioner*, 336 F.3d at 474. At step five of the inquiry, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual function capacity (determined at step four) and vocational profile." *Id.*

## **The ALJ's Decision**

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through March 31, 2010. (ALJ Op. at 3, Page ID 44). She also found that plaintiff had not engaged in substantial gainful activity since September 1, 2008, the alleged disability onset date. (*Id.*, Page ID 44). Plaintiff had the following severe impairments: "mood disorder, intermittent explosive disorder, history of drug and

alcohol abuse, schizoaffective disorder, psychotic disorder and posttraumatic stress disorder (PTSD)." (*Id.* at 4, Page ID 45). The ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listing of impairments. (*Id.* at 5, Page ID 46). She found that plaintiff retained the residual functional capacity (RFC) based on all the impairments, including substance-use disorder

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing ladders, ropes or scaffolds; he should avoid all exposure to unprotected heights and hazardous machinery; work is limited to unskilled jobs as defined in the DOT with SVP levels of 1 or 2, with simple, routine tasks that can be learned in 30 days involving no more than simple work related decisions with few workplace changes; no interaction with the general public; only occasional interaction with coworkers and supervisors; and due to a combination of impairments and/or symptomology from impairments, this person would have three or more unexcused or unscheduled absences per month.

(*Id.* at 6-7, Page ID 47-48). The ALJ made the finding regarding the number of unexcused or unscheduled absences on the basis that "the records clearly indicate that when [plaintiff] is abusing substances he has significant limitations on his ability to function." (*Id.* at 8, Page ID 49).

In defining plaintiff's RFC, the ALJ considered plaintiff's statements regarding his symptoms and limitations, finding them credible at least with respect to his testimony that "he drank alcohol off and on since the alleged disability onset date"; that he testified to having "problems functioning due to his use of substances"; that he spent time in jail "several times related to his substance use"; and that "being bored

and not attending AA meetings were triggers for his substance abuse." (*Id.*, Page ID 49).

The ALJ determined that plaintiff was not able to perform any of his past relevant work, which included grounds maintenance worker, food preparation worker, retail sales clerk, and assembler. (*Id.* at 9, Page ID 50). After considering the testimony of the vocational expert (VE), the ALJ also found that there are no jobs in the national economy that someone of plaintiff's age, education, work experience, and with the RFC that included substance-use disorder would be able to perform. (*Id.* at 10, Page ID 51).

The ALJ then inquired into the materiality of plaintiff's substance use, and determined that, without that disorder, plaintiff would still have the following severe impairments: "mood disorder, intermittent explosive disorder, schizoaffective disorder, psychotic disorder and posttraumatic stress disorder (PTSD)," none of which meets or medically equals any of the listed impairments. (*Id.* at 11, Page ID 52). The ALJ found that, without the substance use, plaintiff's RFC would allow him

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing ladders, ropes or scaffolds; he should avoid all exposure to unprotected heights and hazardous machinery; work is limited to unskilled jobs as defined in the DOT with SVP levels of 1 or 2, with simple, routine tasks that can be learned in 30 days involving no more than simple work related decisions with few workplace changes; no interaction with the general public; only occasional interaction with coworkers and supervisors.

(*Id.* at 12, Page ID 53). The only difference between the two RFCs is that the latter

omits the limitation regarding the "three or more unexcused or unscheduled absences per month," which the ALJ previously noted was based on the substance-use disorder. (*See id.* at 7, 8, Page ID 48, 49).

The ALJ found that, even without the substance use, plaintiff's impairments rendered him unable to perform past relevant work. (*Id.* at 15, Page ID 56). The VE testified that a person of plaintiff's age, education, work experience, and with the revised RFC (without the substance-use disorder) would be able to perform the requirements of representative occupations such as assembly positions (54,000 in Michigan), visual inspection and sorting positions (16,000 in Michigan), and machine tending positions (48,000 in Michigan). (*Id.* at 16, Page ID 57). Based on the VE's testimony, the ALJ concluded that, if plaintiff stopped the substance use, he is capable of performing work that exists in significant numbers in the national economy. (*Id.*, Page ID 57). Accordingly, the ALJ held that plaintiff was not disabled under Section 204.00 of the Medical-Vocational Guidelines. (*Id.*, Page ID 57).

Finally, the ALJ found that plaintiff's substance-use disorder "is a contributing factor material to the determination of disability because [he] would not be disabled if he stopped the substance use." (*Id.* at 17, Page ID 58 (citing 20 C.F.R. §§ 404.1520(g), 404.1535, 416.920(g), and 416.935)). Accordingly, the ALJ determined that plaintiff has not been disabled within the meaning of the Social Security Act at any time from the alleged disability onset date through the date of her decision. (*Id.*, Page ID 58).

**Discussion**

The Social Security Act, as amended in 1996, precludes the award of DIB and SSI benefits based on alcoholism and drug addiction. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see White v. Commissioner*, No. 1:13-cv-172, 2014 WL 1028888, at *3 n.3 (W.D. Mich. Mar. 17, 2014) (citing *Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004)). Plaintiff bears the burden of demonstrating that substance abuse was not a contributing factor material to a determination of his disability. *White*, 2014 WL 1028888 at *3 n.3 (citing *Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012)).

Where an ALJ finds that a claimant is disabled, but there is medical evidence of drug addiction or alcoholism, the ALJ must determine whether the substance abuse is a contributing factor material to the determination of disability. *See* 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ must identify those physical and mental limitations that would remain if the claimant stopped using drugs and alcohol, and then assess whether the remaining limitations are disabling. *See* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations are not disabling, substance abuse is a contributing factor material to the determination of disability; and accordingly, the claimant cannot be considered disabled under the Social Security Act. 20 C.F.R. §§ 404.1535(b)(2)(I), 416.935(b)(2)(I). "The key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the

determination of disability is whether [the ALJ] would still find [the claimant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

Plaintiff argues that the ALJ improperly rejected his treating physician's opinion, and that the ALJ substituted her own lay judgment, impermissibly "playing doctor." (Plf. Brief at 5-7, Page ID 742-44). A review of the ALJ's opinion and the record evidence reveals that the ALJ based her decision on substantial evidence, not her own lay opinion.

Plaintiff's treating source, Nan Alt, M.D., is a psychiatrist. (Page ID 513). On September 19, 2011, she provided the Grand Rapids Housing Commission an opinion that plaintiff is a developmentally disabled person.[1] (Page ID 512-13). On May 7, 2012, Dr. Alt responded to a Mental Impairment Questionnaire in which she offered the following diagnoses for plaintiff: "schizoaffective disorder" and "polysubstance dependence partial remission." (Page ID 708). She noted: "Historically [plaintiff] has not been able to maintain appropriate attendance at scheduled doctor appointments. In addition, he has been presenting with psychotic symptoms – auditory hallucinations and loosening of associations, These will be distracting for [plaintiff] and disturbing for those he interacts with." (Page ID 710). She also noted that plaintiff's "psychotic symptoms most likely will interfere with his ability to maintain appropriate levels of

---

[1] The question of whether one is disabled for purposes of the Social Security Act is one reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

behavior over long periods of time." (Page ID 711). Dr. Alt reported that plaintiff's prognosis was "guarded." (Page ID 708).

Dr. Alt failed to respond to the question regarding how often she would anticipate plaintiff's impairments would cause him to be absent from work. (*See* Page ID 714). She placed a question mark in response to the question of whether plaintiff's alcohol or substance abuse contributed to his limitations. (Page ID 714). She noted, however, that plaintiff "experiences co-occurring disorders. It would be difficult to determine if his mental health issues exacerbate or vice-versa. What is known is that he has not been able to maintain complete abstinence." (Page ID 714). Dr. Alt also noted that "[plaintiff's] impairment can lead to poor impulse control and poor decision making. With [history] of polysubstance and need for pain contract – monitoring will always be an issue." (Page ID 714). In response to the question of what changes she would make to her description of plaintiff's limitations if he were "totally abstinent" from alcohol and substance abuse, Dr. Alt stated: "No changes." (Page ID 714).

While she considered Dr. Alt's opinion that plaintiff's limitations would remain unchanged if he abstained from alcohol and substance abuse, the ALJ gave it "limited weight." (ALJ Op. at 9, Page ID 50). The ALJ cited two reasons for that decision: (1) Dr. Alt's opinion is inconsistent with the objective medical evidence, and (2) it is inconsistent with another of the doctor's opinions to the effect that plaintiff's use of substances might contribute to his limitations. (*Id.*, Page ID 50 (referring to Page ID 714 ("It would be difficult to determine if [plaintiff's] mental health issues exacerbate [his substance abuse] or vice-versa."))).

-10-

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of h[is] symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record,

the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006). While the ALJ must consider these factors, she is not required to discuss each of them. *See Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011); *Mayfield v. Commissioner*, No. 1:12-cv-912, 2014 WL 1341923, at * 1 (W.D. Mich. Mar. 31, 2014) (collecting cases); *see also Hernandez v. Colvin*, 567 F. App'x 576, 584 (10th Cir. May 28, 2014) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart*, 710 F.3d at 376.

**1.**

In this case, the ALJ provided good reasons for discounting Dr. Alt's opinion that plaintiff's limitations would remain unchanged if he abstained from alcohol and substance abuse. The ALJ concluded first that the opinion was inconsistent with the objective medical evidence. (ALJ Op. at 9, Page ID 50). That conclusion is supported by substantial evidence.

In a December 22, 2009, appointment with consulting psychiatrist E.W. Fowler, Jr., D.O., plaintiff reported that he was taking his medications, and that he found them "most helpful." (Page ID 474). Plaintiff advised Dr. Fowler that his struggle with explosive outbursts had lessened, and that his auditory hallucinations had "all but been eliminated." (Page ID 474). Dr. Fowler noted that plaintiff was "not nearly as affectively unstable." (Page ID 474).

On October 11, 2010, plaintiff reported to his Barry County Mental Health therapist that he was not using substances; the therapist noted that plaintiff had no reported substance use since April 2010. (Page ID 461). The therapist reported that plaintiff's mood/affect, thought process/orientation, behavior/functioning, and medical condition were all "unremarkable." (Page ID 461).

On December 27, 2010, plaintiff was examined by Wayne B. Kinzie, Ph.D., a licensed psychologist to whom plaintiff had been referred by the State agency. (Page ID 501-06). Plaintiff reported that he had been sober since March 2010 (Page ID 503), a date of sobriety that is fairly consistent with what plaintiff told the Barry County therapist. Plaintiff described being involved in "household chores, such as laundry,

making meals, preparing food, and doing some of the house cleaning." (Page ID 503). Dr. Kinzie noted that plaintiff appeared to be "in contact with reality during the evaluation session." (Page ID 503). Dr. Kinzie described plaintiff's stream of mental activity as "spontaneous" in presentation, with "average" speech pattern, and "adequately" organized; he also reported that plaintiff's "affect was within normal limits other than the noticeable anxiety." (Page ID 504). Plaintiff was oriented in his person, time, and place; his memory was intact; he was capable of rapid mathematical calculations; he could perform abstract thinking; and he had normal judgment. (Page ID 504-05).

Although Dr. Kinzie reported that plaintiff's prognosis was "guarded," he noted plaintiff's stated belief that the medications were helping to modulate his psychotic symptoms. (Page ID 506). He also reported that plaintiff's substance abuse was under "better control," and he recommended that plaintiff continue to attend Alcoholics Anonymous meetings. (Page ID 506).

Plaintiff began substance abuse treatment in August 2011, which appeared to go well, at least initially. (Page ID 582). In September 2011, plaintiff reported success in managing his anger, and noted: "since I havn't (sp) used I have been able to think clearly and not want to use." (Page ID 577). Plaintiff reported that his substance abuse contributed to his inability to deal with many of his issues. (Page ID 577).

Dr. Alt also noted improvements in plaintiff's mental functioning during a period of sobriety. During a September 19, 2011, appointment, Dr. Alt noted that plaintiff was "alert and oriented in all spheres"; he denied hallucinations; he reported doing well

on his medications; and he appeared "happy." (Page ID 697). As to his mental status, Dr. Alt noted that plaintiff's mood was "euthymic"; his speech was "logical" and "coherent"; recent and remote memory appeared "unimpaired"; psychomotor activity was "normal"; he had a "negligible degree of conceptual disorganization"; and his judgment was "fair." (Page ID 698).

Plaintiff thereafter moved into his own apartment and resumed drinking; the record evidence indicates that his functioning declined. (Page ID 530-55; Page ID 663, 666). During a home visit by a counselor on January 18, 2012, however, plaintiff reported that he had been clean and sober for several days. (Page ID 658-59). The counselor described plaintiff as presenting with "appropriate affect"; that he was "well groomed"; and that his "thinking was logical." (Page ID 660). The counselor noted that plaintiff had been to the grocery store and was cooking breakfast. (Page ID 660).

The ALJ concluded that this evidence demonstrates that plaintiff experienced improvement in his functioning during periods of sobriety. (ALJ Op. at 14, Page ID 55). The ALJ also concluded that the severe impairments other than the substance-use disorder would be fully accommodated by the revised RFC (i.e., the one without the substance-use disorder). (*Id.*, Page ID 55).

The ALJ also considered the opinions of Jung Kim, M.D., who reviewed the medical evidence available in January 2011 at the request of the State agency.[2] (Page

---

[2]Dr. Kim's specialty is that of psychiatry. (*See* Page ID 186 ("Specialty Code 37"); *see also* Program Operations Manual System (POMS) at DI28086.031B2 (listing Specialty Code 37 as psychiatry) (found at https://secure.ssa.gov/apps10/poms.nsf/lnx/0428086031 (last viewed January 26, 2015)).

ID 165-74; Page ID 175-84). Dr. Kim opined that plaintiff had mild limitations in activities of daily living; he had moderate limitations in social functioning; and he had moderate limitations in concentration, persistence and pace. (Page ID 169). Dr. Kim concluded that plaintiff could understand, carry out, and remember simple instructions, and he could make simple work-related decisions. (Page ID 171). He noted that plaintiff had some limitations interacting with the public; responding appropriately to supervision, coworkers, and work situations; and dealing with changes in a routine work setting. (Page ID 172). Plaintiff would, however, be able to sustain simple, unskilled tasks as generally performed in a competitive environment. (Page ID 171-72).

The ALJ gave "great weight" to Dr. Kim's opinions in considering plaintiff's functioning if he abstained from substance abuse, noting the record evidence of plaintiff's mental status improvement during periods of sobriety.[3] (ALJ Op. at 14, Page ID 55 (referring to Page ID 460-61, 474, 577, 633, 660, and 697-98)). The ALJ may rely on such opinions because state agency doctors are "highly qualified" medical experts "who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I); *see also* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Moreover, as demonstrated above, the opinion is consistent with, and well supported by, the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

---

[3]The ALJ gave Dr. Kim's opinions "limited weight" when she considered plaintiff's substance-use disorder, as "[a]dditional records were received after Dr. Kim's evaluation that document [plaintiff] was using substance[s] intermittently and that his use of substances caused his functioning to deteriorate." (ALJ Op. at 8, Page ID 49).

**2.**

The ALJ's alternate explanation for giving "limited weight" to Dr. Alt's opinion regarding the materiality of alcohol and substance abuse – it's internal inconsistency with the doctor's other opinions (ALJ Op. at 9, Page ID 50) – is sound. In completing her questionnaire, Dr. Alt opined, on the one hand, that plaintiff's alcohol and substance abuse might contribute to his limitations (*see* Page ID 714 ("It would be difficult to determine if [plaintiff's] mental health issues exacerbate [his substance abuse] or vice-versa.")), but, on the other, that there would be "no changes" to his limitations if he abstained. (Page ID 714). These inconsistent opinions appear on the same page of the questionnaire, responding to different subparts of the same question. (*See* Page ID 714). In addition, Dr. Alt's response to the more general question of whether plaintiff's substance abuse contributes at all to his limitations is, at best, ambiguous – a cryptic question mark. (*See* Page ID 714).

Dr. Alt explains her opinion that abstention would lead to "no changes" in plaintiff's limitations by noting that "[plaintiff's] impairment can lead to poor impulse control and poor decision making" and that "with [history] of polysubstance and need for pain contract – monitoring will always be an issue." (Page ID 714). That mental impairments can affect impulse control and decision making is a matter of common sense. But Dr. Alt offers nothing to support a conclusion that plaintiff's mental impairments necessarily preclude him from achieving sobriety.

Moreover, a fair reading of Dr. Alt's opinion, in light of her underlying explanation, is essentially the circular argument that abstention would not result in any changes to plaintiff's limitations because his mental impairments interfere with his ability to abstain. But that is not the standard by which the ALJ is to determine whether plaintiff's substance-use disorder is a contributing factor material to his disability. *See* 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1); *see also Smith v. Commissioner*, 572 F. App'x 363, 369 (6th Cir. 2014) ("The [Social Security Act] does not create an exception based on the cause of the addiction.").

Plaintiff correctly notes that Congress did not intend to exclude every alcoholic from receiving Social Security benefits "merely because they are also drunks." (Pltf. Reply Brief at 1-2, Dkt. 21, Page ID 759-60). Plaintiff is mistaken, however, to the extent he suggests that Congress intended to preclude from benefits only those "drunks with no other co-occurring affliction." (*Id.* at 2, Page ID 760). *See* 42 U.S.C. §§ 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a *contributing factor material* to the Commissioner's determination that the individual is disabled." (emphasis supplied); 42 U.S.C. § 1382c(a)(3)(J) (same); *see also* 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1) ("The key factor . . . in determining whether drug addiction or alcoholism is a *contributing factor material* to the determination of disability is whether [the ALJ] would still find [the claimant] disabled *if [he] stopped using drugs or alcohol*." (emphasis supplied)).

It appears from a review of her decision that the ALJ has considered the relevant factors in assessing the weight to be given Dr. Alt's opinions. These include the supportability of the opinion and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff has failed to meet his burden of establishing that his alcohol and substance abuse was not a contributing factor material to the determination of disability. *See White*, 2014 WL 1028888 at *3 n.3 (citing *Cage*, 692 F.3d at 122-25). That plaintiff cites to some evidence that his limitations would remain unchanged should he abstain from alcohol and substance abuse is insufficient to overcome the ALJ's decision. *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (The ALJ's decision must be affirmed as long an it is supported by substantial evidence, notwithstanding that there is substantial, or even preponderant evidence of disability.).

## **Conclusion**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Respectfully submitted,

Date: January 28, 2015         /s/ Phillip J. Green
                               PHILLIP J. GREEN
                               United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).